IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RONALD HIGH, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 16-2915 |
| UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |

******

**<u>MEMORANDUM OPINION</u>**

This case concerns a United States Postal Service truck crashing into Plaintiff Ronald High ("Mr. High") while Mr. High was riding his bicycle. As a result, Mr. High sustained serious injury to his left shoulder. Mr. High filed suit against the United States for negligence pursuant to the Federal Tort Claims Act, 42 U.S.C. § 1346. In advance of trial, the parties stipulated to the Government's liability, as well as damages arising from Mr. High's lost wages, medical bills, and the value of his bicycle, which was destroyed in the crash. The total stipulated economic damages are $46,740. ECF No. 31 ¶ 1-6.

The sole remaining question at trial, therefore, concerned Mr. High's non-economic damages for pain and suffering, including his pre-impact fright, loss of use and enjoyment of his shoulder, and other emotional distress. Trial took place on January 30, 2018. At the conclusion of the presentation of evidence, the Government conceded that Mr. High was entitled to some compensation for his pain and suffering, and recommended that the Court award non-economic damages of $32,260, for a total award of $77,000. Based on the unrebutted evidence presented

at trial, the Court finds that Mr. High is entitled to $154,000 in non-economic damages, for a total award of $200,740.

## I. Applicable Law

The parties agree that in this suit, Maryland law allows recovery for pain and suffering, loss of enjoyment, and emotional distress. *See McAlister v. Carl*, 233 Md. 446, 452–55 (1964); *Smith v. Borello*, 370 Md. 227, 245–57 (2002). *McAlister* broadly addresses permissible compensation for losing "things which involve matters of common experience with which a jury may be expected to have some familiarity." *Id*. A plaintiff may also recover for his emotional distress, such as "depression, anguish, and grief." *See Smith*, 370 Md. at 247. Finally, a court may award damages for pre-impact fright or "fear and its physical manifestations" during a "reasonable window of anxiety." *Faya v. Almaraz*, 329 Md. 435, 456 (1993). As with all claimed damages, the plaintiff bears the burden of demonstrating by a preponderance of the evidence not only the damage itself, but that the defendant's negligence proximately caused that damage.

## II. Findings of Fact

### A. The Crash – Pre Impact Fright

At trial, Mr. High testified without challenge to the harrowing events leading up to the crash. Mr. High explained that before the crash, he was an avid cyclist, riding 40 to 60 miles three times a week. On August 24, 2013, Mr. High was cycling on Central Avenue. As Mr. High approached an intersection, he testified to seeing a postal truck. Mr. High knew that he had the right of way, so he proceeded to cross the intersection. As Mr. High was crossing, he heard the truck rev its engine and saw the truck approaching on his right side. He began to wave his

2

hand and scream "bike, bike bike," in a futile attempt to capture the truck driver's attention and avoid the crash. At that moment, **Mr.** High was "totally terrified." The truck then struck High on the right side with great enough force that it sheared his cycle in three places.

Plaintiff's Exhibit 2A      Plaintiff's Exhibit 2B      Plaintiff's Exhibit 2C

  

On impact, **Mr.** High was catapulted three or four feet in the air. He recalls bouncing on the truck's hood, sliding across, and landing in the street head first. His left shoulder was "driven right into the road" on impact. **Mr.** High was paralyzed from the pain. "I just couldn't move. I couldn't help myself up. . . . I was just helpless" in the middle of a busy intersection. **Mr.** High did not lose consciousness, and so recalls police and first responders coming to his aid. He was transported by ambulance to Anne Arundel Medical Center where he was treated for a sizeable knot on his head, abrasions to his leg and hand, and injuries to his left shoulder.

### B. From Crash to Surgery

As a direct result of the crash, **Mr.** High suffered a grade 2 separation of the acromioclavicular ("AC") joint in his left shoulder. Initially, **Mr.** High was treated through pain medication and physical therapy. He attended twenty one physical therapy sessions over the course of fourteen months. However, it is undisputed that **Mr.** High continued to experience pain, limited range of motion, and other persistent symptoms such as a popping, grinding, and a

clicking sensation in his shoulder.

Although Mr. High eventually went back to work at his two jobs (as a water meter technician for Washington Suburban Sanitation Commission and as a custodian for Stephenson's Custodial), he suffered limitations at work. One time, Mr. High related that his shoulder "locked" in place and he could not lower his arm without excruciating pain. "Those kind of things continued to happen for a while," Mr. High noted during trial.

In search of pain relief, Mr. High was twice treated with steroid injections. The shots had little effect. As a result, Mr. High also was limited in his physical activity at home. Before the crash, Mr. High did all of the heavy lifting in his household. His wife, Joanne High ("Mrs. High"), testified that Mr. High did the vacuuming, took care of the lawn, washed both cars, and lifted "heavy things such as plants or if I needed something moved around the house like an aerial [sic] rug." After the crash and for a significant time, Mrs. High, who suffers from spinal stenosis, had to take over many of these responsibilities. Although Mr. High gradually regained strength and mobility, he could not do everything he once had done. Basic "motions continued to aggravate" his shoulder. "The things that I did on a daily basis, just part of living, just going home, reaching in the cabinet, just taking a shower, just walking the dog," Mr. High could not do without planning and forethought. Mr. High was forced to approach routine tasks with apprehension, fearing pain from overuse or re-injury if he were not exceedingly careful.

Similarly, Mr. High struggled with resuming his "passion"—cycling. After the crash, riding re-traumatized him. "Anything that was coming from my right side behind me," the same side from which the Defendant's postal truck hit him, "caused me excessive apprehension."

4

Although his anguish while cycling has improved, Mr. High to this day does not ride nearly as much as he had before the crash.[1]

### C. Surgery to Present Day

After fourteen months of living with persistent pain and limited range of motion, Mr. High underwent subacromial decompression surgery on his left shoulder. Mr. High described post-surgery as returning "back to the beginning . . . you've got to start over again." Once again, he could not move his shoulder, was in great pain, and had limited mobility. He resumed physical therapy and followed all doctors' instructions. Within months, Mr. High regained significant function, and he agrees that his shoulder is better after the surgery. However, Mr. High indisputably has suffered permanent physical injury to his shoulder, the limitations of which he will bear the rest of his life.

Specifically, both Plaintiff and Defense medical experts agree that Mr. High has sustained permanent physical damage to his shoulder as a result of the crash. Dr. James E. Gilbert, M.D., Mr. High's treating orthopedic surgeon, opined that Mr. High experiences a self-described level of pain of "one out of ten aching pain in the AC joint region on the left side at rest, and the pain goes up to eight out of ten with very higher level activities." Further, upon examination and based on Dr. Gilbert's training and experience, Dr. Gilbert opined that Mr. High suffers a ten percent upper body impairment, which translates to a six percent whole person impairment.

The Government's expert, Dr. Richard Levine, M.D., agreed in large measure with Dr. Gilbert's conclusion as to permanency, and opined that Mr. High suffered a nine percent upper

---

[1] The Government rightfully points out that Mr. High's limitations may be due in part to his having sustained a pelvic fracture while cycling in 2016. The Court takes into consideration this injury in its analysis.

body impairment and a five percent whole person impairment. Dr. Levine, however, noted pre-existing arthritis in Mr. High's shoulder, which accounts for the percentage differential attributable to the crash. For purposes of the Court's analysis, the difference in opinion between the two doctors is negligible and does not affect the overall award.

Similarly, both Drs. Gilbert and Levine attribute Mr. High's mild physical deformity of his left shoulder to the crash. As Dr. Levine explained at trial, Mr. High will forever have a protrusion of his clavicle as a result of the bones separating slightly. Mr. High also will always experience crepitation, or a "clicking, popping, grinding" and "crunching sensation that you might feel when ranging a joint." Mr. High describes the popping and grinding of his shoulder as the constant reminder of the crash.

As to the other lingering effects of the shoulder injury, Mr. High notes that "[t]he pain is still there, it doesn't go away. Working, if I'm going to lift something, if I'm going to pull something, I have to stop and think about what I'm getting ready to do. It has put a [p]ause, a comma in my actions." Mr. High cannot cycle more than once a week for 30 miles at a time. Nor can he cycle competitively with the same frequency. In addition, before the crash, Mr. High used to train with weights, bench pressing 150 to 200 pounds, and curling 75 to 80 pounds. Now, Mr. High testified, "I've got 80 pounds on my bench," illustrating the decreased capacity he experiences as a result of his shoulder injury.

### III. Damages

Among the more difficult decisions in law is putting a price on a person's loss of peace, enjoyment, and pain-free living. It is undisputed that Mr. High has suffered physically and emotionally, and to this day, cannot live as he did before the crash. The parties stipulate that Mr.

High is entitled to $46,740 for lost wages, medical expenses, and the lost value of his bicycle. In recognition of Mr. High's pre-impact fright, his pain and suffering during his recuperation, his months of rehabilitation, his surgery, and the permanent loss of function in his shoulder, the Court awards an additional $154,000 in non-economic damages for total damages of $200,740. A separate Order follows.

 2/8/2018                                                          /S/
Date                                                                  Paula Xinis
                                                                       United States District Judge